QUESTION: How should the provisions of s. 145.18(2), F.S., be interpreted in calculating the compensation of officers governed by Ch. 145, F.S.?
SUMMARY: Each official whose salary is fixed by Ch. 145, F.S., (including a district school board member) who has not yet reached the maximum salary prescribed by Ch. 145 for his or her office is entitled to compensation during a so-called "compensation" year, October 1-September 30, equal to the amount of compensation received during the preceding year ending September 30, plus an additional amount equal to 20 percent of the amount of compensation received during the preceding fiscal or "population" year ending June 30, provided the total amount so computed does not exceed the salary prescribed by Ch. 145 for the office for that "compensation" year — that is, base salary plus population increment (plus cost-of-living "adjustment" after October 1, 1974). Once the maximum salary prescribed by Ch. 145, F.S., has been attained by a Ch. 145 official, he or she will be entitled to a salary increase in any year in which the population of the county and/or the cost-of-living factor show an increase. However, the salary increase in any compensation year may not exceed 20 percent of the compensation received during the preceding population year ending June 30; and both the cost-of-living increase and the population-increment increase must be included in determining whether a salary increase in any given year exceeds the 20 percent limitation. The provision in question is a part of the Uniform County Officers' Salaries Act, originally adopted in 1969 (Ch. 69-346, Laws of Florida) to provide a uniform salary schedule for county officers and district school board members. As adopted in 1969, the act provided that those officials (except district school board members and supervisors of elections) whose total compensation for the "immediately preceding year under which the office operates" (Emphasis supplied.) was less than the salary payable under the salary schedule fixed by the 1969 act "shall have their salary increased each year at the rate of twenty percent of their total annual compensation until their salary reaches the amount provided in this chapter. . . ." Section145.121(2)(b), F.S. It was ruled by my predecessor in office that, under this provision, county budget officers were entitled to compensation for the period October 1, 1969, to September 30, 1970, at the rate of 120 percent of their total compensation received during the preceding fiscal year ending September 30, 1969. A somewhat similar formula was prescribed for county fee officers who operated their offices on a calendar-year basis. Attorney General Opinion 069-136. In 1973 the Legislature revised the 1969 salary schedule to provide a "built-in" method of increasing the salary of county officials automatically as the population of the county increases in order to avoid the necessity of adopting special laws to do so. See Ch. 73-173, Laws of Florida (Ch. 145, F.S.). The 1973 salary schedule fixes a "base salary" for a particular county office in a county within a certain population bracket and augments that base salary by a "population increment" based on the excess of inhabitants over the minimum number in that particular bracket. Provision is made also for "adjusting" the salary to reflect a cost-of-living increase or decrease. The base salary plus the population increment, adjusted to reflect a cost-of-living increase or decrease, constitute the salary of a particular county official for a particular year. [The population figures and cost-of-living increase or decrease are certified to the counties annually by the Department of Administration. See ss. 145.021 and 145.18(1).] In providing for such automatic salary increases, the Legislature specifically provided in s. 145.18(2) as follows: In no event shall any person receive for the execution of his power, functions, and official duties compensation in excess of the salaries provided in this chapter, and in no event shall any person receive an increase in salary in any one fiscal year in excess of 20 percent of his total compensation for the preceding fiscal year ending June 30. . . . (Emphasis supplied.) A cursory reading of this provision in light of AGO 069-136, supra, and without consideration of the background against which it was adopted could lead to the conclusion that the compensation of county officials who have not yet attained the maximum salary prescribed by the 1973 act is 120 percent of the total compensation received during the preceding fiscal year ending June 30. However, s. 145.18(2) "is not a fixing or `granting' of compensation to a county official but a limitation thereon." Attorney General Opinion 074-180. Its limitation applies, in terms, to an increase in the salary of a county official; and, as the maximum salaries prescribed by the 1973 act are not fixed except for 1 year — as noted above, they were intentionally formulated so as to vary from year to year with a change in the population increment and cost-of-living index — the 20 percent limitation is applicable not only to county officials who have not yet reached the maximum prescribed by the 1973 act for their particular position (base salary plus population increment) but also to those who received the maximum during a preceding year or years and thereafter are entitled to a salary increase because of a population increase and, perhaps, a cost-of-living increase, also. (These increases, either standing alone or together, may not exceed the 20 percent limitation on salary increases prescribed by the act. Attorney General Opinion 074-180. The 20 percent limitation on the salary increase is clearly and unambiguously related to the fiscal year ending June 30; and, as noted in Phil's Yellow Taxi Co. v. Carter,134 So.2d 230, 232 (Fla. 1961), the "definite phraseology" in statutes is binding on courts. Accord: In re Investigation of Circuit Judge of Eleventh Judicial Circuit, 93 So.2d 601 (Fla. 1957). The limitation on the salary increase was related to the "fiscal" year ending June 30 for the reason that the figures upon which such an increase must be based — the population figures for the "population increment" increase and the consumer price index for the cost-of-living "adjustment" — are computed as of the fiscal year ending June 30. See ss. 145.021 and 145.18(1), F.S. But no valid reason can be conceived for limiting the total compensation of county officials for any given year to 120 percent of that received during the 12-month period ending June 30. As noted in AGO 073-330A, the annual salary increases under the flexible salary schedules prescribed by Ch. 73-173, supra, based on an increase in population in the county and/or a cost-of-living "adjustment," take effect on October 1 of each year for the remainder of that fiscal year; and all officers of the county, whether fee or budget officers, operate their offices on a fiscal year of October 1-September 30 (Ch. 73-349, Laws of Florida, ss.218.30-218.35, F.S.). (District school board members operate under annual budgets prepared in accordance with regulations prescribed by the State Board of Education, s. 237.041, F.S., Rule 6A-1.071, F.A.C. — apparently on the state's fiscal year of July 1-June 30.) See also s. 16 of Ch. 73-173, declaring that . . . nothing herein contained shall be construed to prohibit the continuation of compensation received by county officers at a rate not less than that existing for the month of June, 1973, until the effective date of this act. [Section 16, Ch. 73-173, supra.] In these circumstances, I have no difficulty in concluding that s. 145.18(2), supra, does not limit the county officers in question to 120 percent of the compensation received during the 12-month period ending June 30. What the Legislature has done, apparently, is to establish a "compensation" year of October 1-September 30 for a county official whose compensation is fixed by and may change from year to year under the flexible salary schedules of the 1973 act, depending upon changes in the county's population and the cost-ofliving factor. It has also fixed a "population" year of July 1-June 30 as the basis for computing the 20 percent limitation upon a salary increase based upon population (and the cost-of-living adjustment) to which the official will be entitled in any given "compensation" year. (Neither of these years has any relationship to the actual service years of a particular elected county official. The terms of office of county commissioners and district school board members begin 2 weeks after the general election in November; and the terms of all others begin on the first Tuesday after the first Monday in January following the November general election. See s. 100.041, F.S.) Thus, in any given compensation year — including the compensation year beginning October 1, 1973 — a county official who has not yet reached the maximum salary prescribed for his position by the Ch.145, F.S., salary schedule is entitled to be compensated in an amount equal to the compensation actually received by him during the immediately preceding compensation year ending October 1, plus an additional amount equal to 20 percent of the compensation actually received by him during the preceding population year ending June 30 — provided, of course, that the total amount does not exceed the salary (the base salary plus the population increment, adjusted to reflect a cost-of-living increase) prescribed by the appropriate Ch. 145 salary schedule for the office for that compensation year. A county official who in a particular compensation year has received the full amount of the salary to which he is entitled under the applicable salary schedule is entitled to a salary increase in any year in which the population of the county and/or the cost-of-living index show an increase. However, the total amount of such increase may not exceed 20 percent of the compensation received during the preceding fiscal or population year ending June 30. (A decrease, either in the population of the county or the cost-of-living index for the preceding fiscal year ending June 30, must, of course, be reflected by decreasing proportionately the salaries of the officials of that county.) Both the cost-of-living increase and the populationincrement increase must be included in determining whether a salary
increase for a particular "compensation" year exceeds the 20 percent limitation. Attorney General Opinion 074-180.